**A. P. W. PAPER CO., Inc., v. RILEY, Collector of Internal Revenue.**

**FULD & HATCH KNITTING CO. v. SAME.**

**MOHAWK CARPET MILLS, Inc., v. SAME.**

District Court, N. D. New York.

Oct. 18, 1935.

Dugan & Bookstein, of Albany, N. Y. (Isadore Bookstein and Avrom M. Jacobs, both of Albany, N. Y., of counsel), for A. P. W. Paper Co., Inc.

James W. Ferguson, of Amsterdam, N. Y. (Daisy Snook Borst, of Amsterdam, N. Y., of counsel), for Mohawk Carpet Mills, Inc.

Illch & Poskanzer, of Albany, N. Y. (Robert C. Poskanzer, of Albany, N. Y., of counsel), for Fuld & Hatch Knitting Co.

Frank J. Wideman, Asst. Atty. Gen., and Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (Andrew D. Sharpe and Arthur P. Curran, Sp. Assts. to Atty. Gen., and B. Fitch Tompkins and Donald P. Gorman, Asst. U. S. Attys., both of Syracuse, N. Y., of counsel), for Collector of Internal Revenue.

COOPER, District Judge.

This matter comes before the court on two motions, one by all complainants to continue the temporary restraining order until the trial of the suits, and the other by the defendant to dismiss all three bills of complaint for lack of jurisdiction by the court and because of insufficiency.

These three suits are in equity to restrain the collection of process taxes under the Agricultural Adjustment Act of May 12, 1933, c. 25, 48 Stat. 31, 39, 40, § 15 (e), as amended by section 11 of the Act of May 9, 1934, c. 263, 48 Stat. 670, 676, 7 USCA § 615 (e).

In the A. P. W. Case, the tax is not levied upon the basic commodity, cotton, but upon wood pulp or paper, not one of the basic commodities named in the statute, but used by the A. P. W. Company in the manufacture of paper towels, which are deemed to compete with cotton towels, and this complainant is claimed to be liable for compensating and floor taxes.

In the other two cases the processing taxes are laid against the cotton used in the manufacture of underwear, etc., in the Fuld and Hatch case and carpets in the Mohawk Carpet Mills case.

These suits were all brought prior to the amendment of August 24, 1935, but the complaint in the A. P. W. and Fuld and Hatch cases has been amended to attack the amendment also.

The complainants attack the constitutionality of the act on various grounds, the more important of which are:

(a) That in setting up a scheme of local crop control the act is an attempt by Congress to legislate in a field expressly reserved to the several state sovereignties.

(b) That the legislation is not within the taxing power of Congress because it is not a tax levied for governmental purposes, but an exaction from a certain class of persons for the exclusive benefit of another class of persons.

(c) That the rate of the alleged tax is variable and impossible of exact determination, resulting in a rate of tax fixed by the administrative officer not on the basis of facts found, but based on his prophecy of future happenings, which rate is arbitrary, confiscatory, and constitutes a taking of property without due process in violation of the Fifth Amendment.

(d) That the legislation is an improper delegation of legislative authority by Congress to an administrative officer.

(e) That it is invalid under the interstate commerce power because only indirectly affecting interstate commerce.

The complainants allege various grounds of irreparable injury, such as inability to obtain funds to pay the taxes, threatened destruction and confiscation of their capital, business, and property if they fail to pay the taxes with the heavy penalties involved, competitors protected by temporary injunction tending to destroy complainant's market, not only inadequate remedy at law, but utter lack of practicable remedy at law since the amendment.

Government counsel contend that the act is constitutional, that the amendment in section 21 (d) (1, 2), 7 USCA § 623 (d) (1, 2), gives an adequate remedy at law for the recovery of any taxes illegally collected, that the court has no jurisdiction to entertain this suit, that no injunction should be granted because prohibited by section 3224, Rev. St. (26 USCA § 1543), as to taxes before August 24, 1935, and by section 21 (a) of the amendments of August 24, 1935 (7 USCA § 623 (a), later herein referred to, and that in any event complainants make no showing entitling them to a temporary injunction.

The act as it was before amendment (see 7 USCA § 601 et seq.) has been held to be an unconstitutional delegation of power to Congress in various cases, among which are the following: Butler, as Receiver of Hoosac Mills Corporation v. United States (C.C.A. 1) 78 F.(2d) 1; John A. Gebelein, Inc., v. Milbourne (D.C.Md.) 12 F.Supp. 105, August 13, 1935; F. G. Vogt & Sons, Inc., v. Rothensies (D.C.E.D.Pa.) 11 F.Supp. 225.

The act has also been held unconstitutional on the ground that it is an attempt to regulate matters within the exclusive power of states. John A. Gebelein, Inc., v. Milbourne, supra.

740

It has also been held that because of special and extraordinary circumstances existing in particular cases both prior and subsequent to the amendment of August 24, 1935 (7 USCA § 602 et seq.), there was no adequate remedy at law to recover taxes illegally exacted under the act and temporary injunction was granted. John A. Gebelein, Inc., v. Milbourne, supra; Gold Medal Foods, Inc., v. Landy (Pillsbury Flour Mills Co. v. Landy, and concurrent cases) (D.C.) 11 F.Supp. 65, decided July 11, 1935, by three District Judges of Minnesota; Washburn Crosby Co. v. Nee (D.C.W.D.Mo.) 11 F.Supp. 822, decided July 31, 1935; Merchants Packing Co. v. Rogan (Luer Packing Co. v. Rogan) (C.C.A. 9) 79 F.(2d) 1, decided Sept. 24, 1935; Shenandoah Milling Co. v. Early (D.C.Va. Sept. 23, 1935). Oral opinion; G. B. R. Smith Milling Co. v. Thomas (D.C.N.D.Tex.) 11 F.Supp. 833, Sept. 20, 1935.

My colleague in this district has also granted temporary injunctions in several cases pending before him. Utica Knitting Co. v. Shaughnessy,[1] August 15, 1935.

While the Circuit Court of Appeals in the Ninth Circuit by a divided court denied injunction before the amendment in Fisher Flouring Mills Co. v. Vierhus, 78 F.(2d) 889, it granted an injunction, after the amendment in Luer Packing Co. v. Rogan, supra. They placed this change of view in part upon the amendment in these words: "The situation is changed by amendment to the law effecting the remedy of the taxpayer to recover an invalid tax."

All these cases, whether expressly so deciding or not, necessarily implied grave doubt of the constitutionality of the statute.

There are several cases, some in the Southern and Eastern District of New York, holding the act constitutional or denying temporary injunction, but most of those cases were decided before or without knowledge of the Hoosac Mills Corporation, Pillsbury Flour Mills Co., and Luer Packing Co. Cases, supra.

The weight of decision is that the statute is unconstitutional, and because the remedy at law is inadequate or lacking, temporary injunction was granted.

On August 24, 1935, various amendments to the Agricultural Adjustment Act became effective (7 USCA § 602 et seq.), which, so far as material here, sought to accomplish the following objects:

1. Give a remedy for the recovery of taxes collected both before and after the amendment of August 24, 1935, if the act shall be finally held unconstitutional or the collections were otherwise illegal. Sections 21 (d) (1–3).

2. Forbid all suits to prevent collection of processing taxes under the act, section 21 (a) (g).

3. Ratification of the taxes laid by the Secretary of Agriculture before August 24, 1935, section 21 (b).

The ratification by Congress of the taxes imposed by the Secretary of Agriculture seems like an admission, at least, of doubt, of the constitutionality of the delegation of power to the Secretary. While the amendment makes a slight change in the power given the Secretary, the changes are slight and leave unaffected the power of the Secretary to reduce, increase, modify, or eliminate the tax, not by any practicable standard, but largely by his opinion or prophecy of future prices and conditions. It still seems a delegation of legislative power. As a retroactive tax measure, its constitutionality is doubtful. Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206.

At the most, even assuming that the amendment of August 24, 1935, cured the defective delegation of legislative power, the other grounds of invalidity remain.

The whole amendment was before the court in Luer Packing Co. v. Rogan (C.C.A. 9) 79 F.(2d) 1, supra, when it granted temporary injunction after denying it in the previous case of Fisher Flouring Mills Co. v. Vierhus.

The government also contends that section 21 (d) (1–3) and (g) give an adequate remedy for the recovery of the taxes paid if the act is declared unconstitutional or collections are otherwise excessive or illegal.

Section 21 (d) (1) and (2) seems to make requirements for recovery of the taxes extremely burdensome and impracticable of compliance. Under the guise of providing a method of recovery, it is subject to the challenge made by complainants that recovery thereunder is made practically impossible. But if the requirements could be met, there is no pro-

[1] No opinion written.

vision for a real judicial review of the decision of the Commissioner of Internal Revenue.

These subdivisions provide that the taxpayer shall first apply to the Commissioner of Internal Revenue, an administrative officer for refund, that the latter may investigate and make his findings of fact and determine whether or not the taxpayer has satisfied the requirements for a refund under the burdensome conditions laid down.

The subdivision further provides that in any judicial proceedings the transcript of the hearing before the Commissioner must be considered as the record in the case in any court. It is reasonably clear that there can be no hearing de novo in a suit brought by the taxpayer as is in tax statutes generally provided, and also there can be no jury trial, for there are no facts to be established.

But, on the contrary, the court proceedings will be limited to a review of the record in the case as made by the Commissioner, and his decision is conclusive unless the court shall determine as a matter of law that his conclusions are wrong on the facts found by him. The record might well be made up, in part at least, of affidavits, etc., without any regard for the requirements of legal proof. There would, of course, be no examination or cross-examination of witnesses before the court. The judicial power is extremely limited.

This is very unlike procedure heretofore known as a remedy for the recovery of taxes paid in excess or illegally exacted.

Surely this may well constitute such special and extraordinary circumstances for the taxpayer with the other facts in the case to warrant injunction in spite of the provisions of section 3224 of the Revised Statutes (26 USCA § 1543), if it is still applicable, and of section 21 (a), 7 USCA § 623 (a).

The amendment of August 24, 1935, section 21 (d) (1) (2), (g) providing recovery of unconstitutionally or illegally collected taxes, penalties, etc., applies to any tax "which accrued, before, on, or after the date of the adoption of this amendment" (August 24, 1935). There can be little doubt that the only remedy for the recovery of taxes, penalties, etc., accruing before as well as after August 24, 1935, is contained in these subdivisions of section 21.

No recovery can be had, therefore, except by compliance with the provisions of such statute.

■ Whether there is any reasonably adequate means provided for the recovery of taxes or property which should not have been taken is for the court, not for the Congress.

■ While it is the function of Congress to provide the means, the means provided must have some reasonable relation to the end sought to be attained, and must furnish some reasonable method by which the taxpayer may recover what should not have been taken from him. Wilson v. Illinois Southern Ry. Co., 263 U. S. 574, 577, 44 S.Ct. 203, 68 L.Ed. 456; Union Pacific R. Co. v. Board of Com'rs of Weld County, 247 U.S. 282, 285, 38 S.Ct. 510, 62 L.Ed. 1110; Atlantic Coast Line R. Co. v. Doughton, 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051.

The government counsel assert that section 21 (d) (1), (2) of the amendment of August 24, 1935, relating to the recovery of taxes illegally collected is like the provision of the Revenue Act of 1928 relating to sales tax, and therefore affords adequate remedy for recovery of such taxes.

The amendment of August 24, 1935, providing for recovery of taxes illegally paid goes far beyond the procedure outlined in section 424 (a) (2) of the Revenue Act of 1928 (c. 852, 45 Stat. 791).

The Circuit Court of Appeals in the Ninth Circuit in the Luer Packing Co. v. Rogan, 79 F.(2d) 1, supra, necessarily so held, for before this amendment in another like case (Fisher Flouring Mills Co. v. Vierhus) they denied injunction, whereas, after the amendment, that court granted temporary injunction in the Luer Packing Co. Case.

Perhaps the main reliance of government counsel is that section 21 (a) of the amendment of August 24, 1935 (7 USCA § 623 (a) forbids this court to grant an injunction against the collection of the processing tax under the act. This section, so far as material here, is as follows: "No suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assess-

ment or collection of any tax imposed * * * on or after the date of this amendment [August 24, 1935]."

It is this provision which the government contends ousts the court of all jurisdiction as to postamendment taxes, leaving section 3224 of the Revised Statutes (26 USCA § 1543) applicable to preamendment taxes.

As the court understands it, the government's contention. is in essence that under these two sections no court has any jurisdiction whatever as to the tax collections under this act, except in review of proceedings before the Commissioner under section 21 (d) (1), (2).

That in a tax law Congress may forbid injunction where it gives adequate remedy at large to recover illegally collected taxes is well settled.

But that the Congress may by unconstitutional statutes, denominated a tax law, take the property of the citizen without due process of law and then in the same statute forbid the citizen to seek injunction in a court of equity without giving him an adequate remedy at law has yet to be established by highest authority. There are authorities which at least inferentially hold to the contrary. Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L. R. 1081; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 679, 50 S.Ct. 451, 74 L.Ed. 1107; Graham & Foster v. Goodcell, 282 U.S. 409, 431, 51 S.Ct. 186, 75 L.Ed. 415.

Yet that is what section 3224, Revised Statutes, and the amendment of August 24, 1935, section 21 (a), do if the provision of the section 21 (d) (1) (2), (g), for the recovery of taxes illegally or unconstitutionally collected, is such in name only and is in truth a denial of such right of recovery.

There seems good reason to believe that the recovery provisions are such in name only.

If this AAA statute transcends the delegated powers of the federal government and is therefore unconstitutional, or if it is unconstitutional solely because of the prohibited delegation of legislative power to the executive branch of the government, or for any other reason, the whole tax scheme of the statute must fall before the constitutional bar, and section 21 (a) restraining injunction on equity against the collections would seem to fall with it. .

Were it otherwise, Congress could, by unconstitutional legislation under the guise of a tax law, take the property of the citizen without due process of law, or otherwise deprive the citizen of his constitutional rights, and, by the mere device of prohibiting in such legislation redress at law or suit in equity, could prevent the citizen from seeking and the courts from granting redress, and there would be no possible way of having a judicial determination of the constitutionality of the statute or of preventing the collection of taxes unconstitutionally exacted or of recovering such taxes or of preserving the constitutional rights of the citizen.

And section 21 (a) as added by the amendment seems to run also to the Supreme Court, for the amendment prohibits suit in "any Court," and, if valid, would prohibit relief even in that court.

It is inconceivable that a court of equity would hold that Congress might thus nullify the Constitution. That would seem to be the end of constitutional government in the United States.

The courts are, by the Constitution, made a co-ordinate branch of the federal government.

■ Congress may not encroach upon the equity jurisdiction of the court intended by the Constitution. Michaelson v. United States, 266 U.S. 42, 64, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451.

■ That the courts have jurisdiction despite the provisions of section 3224 of the Revised Statutes (26 USCA § 1543), where special and extraordinary conditions exist, is held in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. The same must be true under section 21 (a).

It is true that section 21 (a) does not in form affect the jurisdiction of the court, but it does, like section 3224, prohibit the suitor from entering the court. So that it directly affects the jurisdiction of the court unless the court disregards the statute. The courts do not disregard the statute, but oust the suitor in such a situation unless he can take himself out of the operation of the statute. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, supra.

There is, nevertheless, some distinction between a statute denying jurisdiction to the court and one denying a suitor access to the court. Section 21 at one time before enactment contained both denials, but, as finally agreed upon, contained only the denial to the suitor.

If the denial ran only to the suitor, the court might not be without jurisdiction when the government proceeded affirmatively to present its claim for taxes and ask for payment in a receivership proceeding as in the Hoosac Mills Corporation Case, supra.

It will be noted, however, that section 21 (a) of the amendment specifically covers receivership. It was probably intended by section 21 (a) to provide that in any kind of legal proceeding a processing taxpayer could not raise unconstitutionality or any other defense to an affirmative claim by the government for payment of the processing taxes, and that all the court could do would be to direct the payment of such taxes.

Undoubtedly the Congress acted in utmost good faith in the enactment of section 21 and intended by other provisions of the section to give a remedy for the recovery of taxes, if such recovery became warranted.

But in attempting to give such remedy, it apparently unconsciously imposed such conditions as to make recovery substantially impracticable, and this leaves the taxpayer without relief.

What has been said before concerning nullification of the Constitution by legislation is intended merely to point out the logical result of legislation restraining suit in equity without affording any adequate remedy at law.

This court is not unmindful that where a tax statute is declared unconstitutional by the lower court, that court should not enjoin collection of the taxes pending the Supreme Court decision where there is adequate remedy provided for the recovery of the taxes collected under the invalid statute. Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 and similar cases.

But the provisions of the tax statutes involved in those cases permitting the recovery of the taxes illegally collected were relatively plain, simple, and adequate, while here there seems little reason to doubt that there is in the statute under consideration no such adequate remedy for the recovery of the taxes collected.

The constitutionality of the AAA is so doubtful, the confusion of decisions already rendered so great, the remedy at law to recover processing taxes collected, in the event of its being finally declared unconstitutional, seemingly so inadequate as to be almost nonexistent, the probability so great that the United States Supreme Court will in the near future determine its constitutionality in one or another of the cases before it, and the circumstances here existing so special and extraordinary, that the court is moved to continue the preliminary restraining order in the form of a temporary injunction until the trial of these cases or until a Supreme Court decision.

Such was apparently the view of the Circuit Court of Appeals in the Ninth Circuit in Luer Packing Company v. Rogan, 79 F.(2d) 1, supra.

The government motion for dismissal of the complaints is denied. Orders carrying into effect this decision may be entered.

The injunctions may run to the taxes assessed both before and after the amendment.

The bill of complaint may be amended in the Mohawk Mills case if counsel so desire.